[Crim. No. 14529. In Bank. Oct. 16, 1970.]

In re RODERICK WALLACE et al., on Habeas Corpus.

290

COUNSEL

Paul N. Halvonik and Marcus Vanderlaan for Petitioners.

Thomas C. Lynch, Attorney General, Derald E. Granberg and James A. Aiello, Deputy Attorneys General, for Respondent.

OPINION

MOSK, J.—Petitioners Wallace, Pamperin, and Mintzer were arrested for allegedly causing an obstruction at a county fair by handing out leaflets protesting the effects on farm workers of the automation of agriculture and the involvement of the University of California in that process. They are currently in constructive custody after suffering misdemeanor convictions of trespass in violation of Penal Code section 602, subdivision (j). That statute makes punishable the act of "Entering any lands, whether unenclosed or enclosed by fence, for the purpose of injuring any property or property rights or with the intention of interfering with, obstructing, or injuring any lawful business or occupation carried on by the owner of such land, his agent or by the person in lawful possession." Petitioners were each sentenced to pay a fine of $100 plus a penalty assessment of $25, or to serve one day in jail for each unpaid $5 thereof.

Petitioners appealed to the superior court appellate department, and that court affirmed the trespass convictions.[1] Petitioners then filed this application for habeas corpus in the Court of Appeal. An order to show cause

[1]Assertedly in order to accomplish an act of "civil disobedience," petitioners had entered the fairgrounds without paying the price of admission. When Pamperin testified to this fact at trial, upon invitation of the trial judge the petitioners were additionally charged with and convicted of the crime of theft in violation of Penal Code section 484. The judgment on that count, however, was reversed by the appellate department, holding that section 484 did not prohibit the conduct in question.

issued and the matter was argued, but by unpublished opinion the court thereafter denied the writ. We granted a hearing, and conclude after a review of the record that petitioners are entitled to the relief sought.

Preliminarily, the Attorney General emphasizes the fact that petitioners did not apply to the superior court for certification of the cause to the Court of Appeal pursuant to rule 63(b) of the California Rules of Court; this omission, it is urged, constitutes a "failure to exhaust appellate remedies" such as to bar relief by habeas corpus. (See, e.g., *In re Dixon* (1953) 41 Cal.2d 756, 759 [264 P.2d 513].) ■ But the " 'requirement of exhaustion of the appellate or other remedy . . . is merely a discretionary policy governing the exercise of the reviewing court's jurisdiction to issue the writ.' " (*In re Black* (1967) 66 Cal.2d 881, 887 [59 Cal.Rptr. 429, 428 P.2d 293], quoting from Witkin, Cal. Criminal Procedure (1963) p. 769.) ■ When special circumstances are shown, compliance with this "requirement" may be excused and the petition may be considered on its merits. (*Ibid.*)

■ Inasmuch as the appellate department opinion in the case at bar was unpublished, the Court of Appeal could not transfer the case on its own motion. (Rule 62(a).) But the superior court could have certified the case sua sponte (rule 63(a)); and as it failed to do so, petitioners could have made an application to that effect (rule 63(b)). Certainly, under normal circumstances, the proper procedure for a defendant desiring further review of a criminal judgment affirmed by the appellate department is to apply for such certification pursuant to rule 63(b); thereafter a petition for writ of habeas corpus will be entertained if certification is denied (*In re Panchot* (1968) 70 Cal.2d 105, 107 [73 Cal.Rptr. 689, 448 P.2d 385]) or if certification is granted but the Court of Appeal refuses to transfer the case (*In re Zerbe* (1964) 60 Cal.2d 666, 667 [36 Cal.Rptr. 286, 388 P.2d 182, 10 A.L.R.3d 840]).

Yet the period within which the defendant must act in this connection is brief indeed: such an application must be served and filed "before the judgment on appeal becomes final" as to the appellate department (rule 63(b)), and in the absence of a petition for rehearing that judgment becomes final "Upon the expiration of 7 days after the same shall have been pronounced" (rule 107(b)(1)). Moreover, in the present case petitioners did not have even this seven-day period in which to act. Throughout the proceedings below petitioners were represented by Attorney Frank B. Baldwin III, but during the pendency of the appeal Mr. Baldwin moved to Philadelphia. The decision of the appellate department was filed on July 31, 1969, and on August 1, 1969, the clerk of the court mailed a notice thereof to petitioners, care of Mr. Baldwin at the latter's California address.

Mr. Baldwin did not receive the notice in Philadelphia until August 9, 1969, and petitioners did not receive the notice from Mr. Baldwin, with a letter urging them to obtain local counsel, until several days following August 18, 1969—i.e., some two weeks after the rule time to petition for rehearing or to apply for certification had expired. Petitioners assert they were unaware until then of their rights and duties under the foregoing rules of court.

There is no provision in the rules for late filing of an application for certification; rule 31(a), relating to late filing of the notice of appeal in criminal cases, does not apply to the present proceedings. Accordingly, petitioners simply had no opportunity to proceed further with their remedy by appeal. ■ In view of the extreme brevity of the filing period allowed by the rules and petitioners' innocence of any fault in failing to receive the clerk's notice in due time, we conclude that special circumstances are present which relieve petitioners from the necessity of fully exhausting their appellate remedy before seeking habeas corpus.

Turning to the merits, we observe that the issue is far more limited than first appeared. The pleadings discussed such larger constitutional questions as the right to distribute leaflets on fairgrounds which are open only upon payment of a fee, and the power of local authorities to regulate or restrict such activities. But at oral argument petitioners conceded that section 602, subdivision (j), is not unconstitutional on its face and that a reasonable application of the statute to protect businesses or occupations would not offend the First Amendment; and the Attorney General in turn conceded that petitioners had the constitutional right to engage in argumentative activity, by written or spoken word, on the premises of these fairgrounds. The Attorney General rested his case, rather, upon a claim that petitioners' conduct actually did "interfere with" and "obstruct" the lawful business of the fair.

In this posture the narrow issue to be decided is whether, as petitioners contend, the record is wholly devoid of evidence to support their conviction of violating section 602, subdivision (j). The Attorney General's objection that the issue has already been litigated on appeal "is inapposite to a case such as the one before us in which there is no material dispute as to the facts relating to petitioner's conviction and in which 'it appears that the statute under which he was convicted did not prohibit his conduct.' " (*In re Panchot* (1968) *supra*, 70 Cal.2d 105, 107, fn. 4, quoting from *In re Zerbe* (1964) *supra*, 60 Cal.2d 666, 668, see also *In re Culver* (1968) 69 Cal.2d 898, 899 [73 Cal.Rptr. 393, 447 P.2d 633]; *In re Murdock* (1968) 68 Cal.2d 313, 316 [66 Cal.Rptr. 380, 437 P.2d 764];

*In re Bevill* (1968) 68 Cal.2d 854, 863 [69 Cal.Rptr. 599, 442 P.2d 679].)

■ As the trial in this case took place in the justice court, petitioners' appeal to the appellate department was predicated on a settled statement of the evidence. (Rule 184.) Rule 187 mandates the trial judge to settle such a statement so as "to make the same set forth fairly and truly the evidence and proceedings. . . ." Here the statement is appended as Exhibit A to the petition, and it concludes with the following declaration signed by the judge who presided at the trial: "I certify that the Statement of the Evidence contained in this Settled Statement on Appeal is correct and was so found by me after a hearing conducted in chambers." In the circumstances, we may likewise take the settled statement as presenting the materially undisputed facts of the case within the meaning of the *Zerbe* rule.

■ Essentially the sole witness for the prosecution was Deputy Sheriff Black, supervisor of security guards at the fairgrounds. According to Officer Black's testimony, he observed petitioners "handing out leaflets and stopping and engaging in discussions with members of the crowd which had gathered in the area of a display of a mechanical tomato harvester." He informed petitioners that distribution of their literature at the fairgrounds was not permitted, and asked them to leave; they were invited to return, however, "provided the signs and leaflets were left behind." Petitioners promptly left the fairgrounds, but reentered one or two hours later and resumed their leafleting activity at the same location. This time they refused to leave, asserting they were doing nothing wrong. Officer Black warned them they would be arrested "if they did not cease their obstruction of the pathway or stopping patrons and soliciting them." The arrests followed.

On cross-examination, Officer Black testified he "saw no physical contact between patrons and defendants. He also stated that members of the public who wished to inspect the tomato harvester *could do so freely,* by avoiding the area where defendants were standing." (Italics added.)

Finally, Pamperin testified for the defense that "no attempt was made *to obstruct any members of the public who wished to inspect the tomato* harvester, that they took positions in the walkway, two of [the] group holding signs, and that their intent was to convey information" contained in the leaflet they were distributing.

On its face, Officer Black's testimony that he informed petitioners they would be arrested "if they did not cease their obstruction of the pathway" establishes only the content of his admonition to petitioners, not the fact

of actual obstruction. Any implication to the contrary, moreover, is negated by the same witness' further testimony that members of the public who wished to inspect the tomato harvester in question "could do so freely." That they could do so "by avoiding the area where defendants were standing" adds nothing to the case: any visitor to a fair or other public exhibition necessarily occupies a certain area of ground or floor space wherever he stands, and persons wishing to proceed past him are manifestly required to "avoid" that area under pain of tort liability. The record is thus devoid of evidence that petitioners "obstructed" the business of the fair (cf. *Shuttlesworth* v. *Birmingham* (1965) 382 U.S. 87 [15 L.Ed.2d 176, 86 S.Ct. 211]), and Pamperin's uncontradicted testimony establishes that petitioners had no intent to do so when they entered the premises. Indeed, petitioners were not in fact arrested because of any physical "obstruction" they may have caused, but simply because they insisted on their lawful right to distribute leaflets and to display signs. As noted above, they were expressly invited to reenter the fairgrounds "provided the signs and leaflets were left behind."

Penal Code section 602, subdivision (j), does not prohibit the conduct in which these petitioners engaged.

Let a writ of habeas corpus issue as prayed.

Wright, C. J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

**McCOMB, J.**—I dissent. I would deny the writ for the reasons expressed by Mr. Presiding Justice Devine in the opinion prepared by him for the Court of Appeal, First Appellate District, Division Four (*In re Wallace,* 1 Crim. 8301, filed February 18, 1970, certified for nonpublication).