[Crim. No. 6156. Third Dist. Aug. 9, 1971.]

In re BILL FRANKLIN FRY on Habeas Corpus.

178

## COUNSEL

Richard J. Asbill, under appointment by the Court of Appeal, for Petitioner.

Evelle J. Younger, Attorney General, Charles P. Just and Roger E. Venturi, Deputy Attorneys General, for Respondent.

## OPINION

**JANES, J.**—Petitioner seeks a writ of habeas corpus from this court on the ground that, as an indigent, he is denied equal protection of the laws by a justice court order which commits him to county jail to serve out a $250 fine at the rate of $5 per day until the fine is paid.

On September 23, 1970, in the Justice Court of the Junction City-Salyer Judicial District (Trinity County), petitioner pled guilty to a Fish and Game Code violation (attempting to take fish other than by angling). He was sentenced to be confined 10 days in jail and to pay a fine of $250. When judgment was pronounced, he informed the court that he had not been working and could not pay the fine. For that reason, the justice court judge suspended execution of sentence, placed petitioner on three years' probation, and suspended his angling license effective December 26, 1970, in order that petitioner might fish legally, interim, for his winter food.[1]

On January 26, 1971, in the Superior Court for the County of Trinity, petitioner entered a guilty plea to a violation of Penal Code section 272 (contributing to the delinquency of a minor). He remained free on bail pending further superior court proceedings.

Two days later, on January 28, 1971, the justice court revoked petitioner's earlier probation because of his section 272 conviction.[2] At the revocation hearing, when the court informed him that he would have to pay the $250 fine and serve the 10 days in jail, petitioner said: "I will never pay another fine in Trinity County." The court then told him that he would have to spend an extra 50 days in jail in lieu of the fine. Petitioner replied, "Jail doesn't bother me." He did not at that time claim

---

[1]The facts concerning petitioner's indigency appear in a sworn declaration by the justice court judge, which respondent sheriff has appended to his return. In this respect, the justice court minutes themselves merely show a "discussion" of petitioner's unemployment and financial "situation."

[2]Petitioner's offense of contributing to the delinquency of a minor occurred on September 12, 1970—11 days before the justice court order granting him probation.

indigency. The court thereupon committed him to jail for the 10 days and to serve out the fine at the rate of $5 per day.

Thereafter, he petitioned the superior court for a writ of habeas corpus. At the hearing on that petition, he contended that, insofar as it incarcerated him for failure to pay the fine, the justice court's commitment order was contrary to *In re Antazo* (1970) 3 Cal.3d 100 [89 Cal.Rptr. 255, 473 P.2d 999] (discussed *infra*), and denied him equal protection of the laws (U. S. Const., Amend. XIV). On February 16, 1971, the superior court found that petitioner was an indigent, but denied his petition. He was released on his recognizance pending appellate court proceedings. At the time of his release, he had been jailed for approximately 20 days under the justice court commitment.

In his application to this court, petitioner reasserted his indigency and consequent inability to pay the fine. Respondent sheriff does not dispute that assertion. We issued an order to show cause, stayed further proceedings in the justice court, and ordered that petitioner remain at liberty on his own recognizance pending our further order.

In the *Antazo* case, *supra,* 3 Cal.3d 100, the state Supreme Court held that the imprisonment of a defendant because of his inability, due solely to his indigency, to pay the fine and penalty assessment imposed upon him as a condition of probation violated the equal protection clause of the Fourteenth Amendment. The court further observed that the same constitutional principles would govern if the fine and penalty assessment were imposed in a judgment of conviction after denial of probation. (*Id.* at pp. 115-116.) The court then said:

". . . [W]e do not hold that the imposition upon an indigent offender of a fine and penalty assessment, either as a sentence or as a condition of probation, constitutes of necessity in all instances a violation of the equal protection clause. Depending upon the circumstances of the particular case and the condition of the individual offender, there are a variety of ways in which the state may fine the indigent offender, as alternatives to imprisonment, without offending the command of equal protection. . . . What we say is that Penal Code sections 1205 and 1203.1 may not be applied in such a way as to foreclose to the indigent offender *the opportunity to obtain his freedom which is implicit in a sentence or probation order providing for payment of a fine.* Rather, our holding is simply that an indigent who would pay his fine if he could, must be given an option comparable to an offender who is not indigent. When the indigent offender refuses to avail himself *of such alternatives* at the inception, or defaults or otherwise fails to meet the conditions of the particular alternative which is offered him without a showing of reasonable excuse, the indigent offender becomes

in the eyes of the court exactly the same as the contumacious offender who is not indigent. When either of these conditions obtain the offender's *indigency* ceases to be dispositive and he may, consistently with the mandate of the equal protection clause, be relegated to 'working out' his fine by imprisonment." (3 Cal.3d at p. 116 (italics added); to the same effect, see *Tate* v. *Short* (1971) 401 U.S. 395 [28 L.Ed.2d 130, 91 S.Ct. 668].)

Respondent first argues that, within the meaning of *Antazo,* petitioner's violation of probation "constituted a refusal to accept a proffered alternative to paying the fine." Respondent candidly recognizes the weakness of this argument, however, by pointing out that "the offense to which petitioner plead guilty [in the superior court] and which resulted in the revocation of probation [by the justice court] is shown by the indictment to have occurred on September 12, 1970, or approximately 11 days *prior* to the pronouncement of probation on September 23, 1970. "(Italics ours.) Hence petitioner's conduct on September 12 cannot logically be deemed "a refusal to accept" probation which had not yet been granted.

Moreover, if petitioner had *not* been indigent, upon revocation of probation and after confinement for 10 days he would still have had (in the words of *Antazo*) "the opportunity to obtain his freedom which is implicit in a sentence . . . providing for payment of a fine." (3 Cal.3d at p. 116.) *Antazo* recognizes that, as alternatives to imprisonment, "there are a variety of ways in which the state may fine the indigent offender" (e.g., by collecting the fine in installments). (*Id.* at p. 114, fn. 13, and p. 116.) Accordingly (again in the language of *Antazo*), petitioner "must be given an option comparable to an offender who is not indigent." (*Id.* at p. 116.)

Respondent further claims that, at the probation revocation hearing, "petitioner unequivocally refused to pay any fine" when he said to the justice court, "I will never pay another fine in Trinity County" and "Jail doesn't bother me." But the refusal of which *Antazo* speaks is the indigent's refusal "to avail himself *of such alternatives*" to imprisonment for nonpayment of a fine. (3 Cal.3d at p. 116.) (Italics added.) The justice court offered petitioner no such alternatives; hence his statements, even if construed as a refusal, cannot be considered to be a disqualifying one.

▮ Respondent also claims that relief by habeas corpus is not available to petitioner because he did not appeal either from the sentence and order granting probation or from the orders revoking probation and committing him to jail. Obviously, however, having been granted probation, petitioner had no practical reason to appeal from the judgment; nor did the sentence specify that he was to serve out his fine in jail if he could not pay it—hence he was then not yet aggrieved. Petitioner does not even now challenge the order revoking probation. His target is the commitment order.

An appeal from that order would not have been an adequate remedy, since the determinative fact of petitioner's indigency would have been a matter dehors the record. (See fn. 1, *supra.*) Moreover, it is unlikely that an appeal could have provided petitioner as prompt relief from his jail confinement as was possible by habeas corpus; and, because he is indigent, his entitlement to bail "[a]s a matter of right" (Pen. Code, § 1272, subd. 2) provided no assurance that he would be freed.

The requirement of exhaustion of appellate remedies is merely a discretionary policy governing the exercise of the reviewing court's jurisdiction to issue the writ of habeas corpus. "When special circumstances are shown, compliance with this 'requirement' may be excused and the petition may be considered on its merits." (*In re Wallace* (1970) 3 Cal.3d 289, 292 [90 Cal.Rptr. 176, 475 P.2d 208].) In the case at bench, the presence of a grave constitutional question and the inadequacy of the appellate remedy comprise such special circumstances. (See, *In re Antazo, supra,* 3 Cal.3d at pp. 107-108; Witkin, Cal. Criminal Procedure (1963) § 797, pp. 769-770, and § 805, pp. 777-778.)

Let the writ of habeas corpus issue, with directions to the justice court to allow petitioner, for the period he served in confinement beyond 10 days, a credit against the amount of his fine calculated at $5 per day, and also to afford him an adequate opportunity, consonant with the views herein expressed, to pay the balance. Petitioner is ordered discharged from the custody of the sheriff of Trinity County under the justice court commitment based on that court's judgment and order revoking probation. The temporary stay issued herein is terminated upon service of the writ.

Pierce, P. J., and Bray, J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 27, 1971.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.