[Crim. No. 4959. Fourth Dist., Div. Two. Feb. 8, 1972.]

In re DAVID STEPHEN BALL on Habeas Corpus.

COUNSEL

Roger Jon Diamond for Petitioner.

Ann Palmer as Amicus Curiae on behalf of Petitioner.

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, and Oretta D. Sears, Deputy District Attorney, for Respondent.

Joseph B. Geisler, City Attorney, Alan R. Watts, Assistant City Attorney, and Robert O. Franks, Deputy City Attorney, for Real Party in Interest.

## OPINION

**KAUFMAN, J.**—By amended complaint filed January 28, 1971, in the Municipal Court, North Orange County Judicial District, defendant was charged with the misdemeanor of ". . . wilfully and unlawfully entering land with the intention of interfering with lawful business carried on by the owner of such land and his agent; to wit: Disneyland . . . ." (Pen. Code, § 602, subd. (j).) The right to jury having been waived, trial was to the court, and defendant was convicted. On appeal to the Appellate Department of the Orange County Superior Court, the judgment was affirmed. Petitioner's application for certification to the Court of Appeal was denied, and certiorari was denied by the United States Supreme Court. Petitioner then filed a petition for a writ of habeas corpus in this court based upon which we issued an order to show cause.

The record before us consists of the petition, the return, a traverse to the return and a copy of a clerk's transcript utilized by petitioner in his appli-

cation to the United States Supreme Court for certiorari, which includes an engrossed settled statement of the evidence (see *In re Wallace,* 3 Cal.3d 289, 294 [90 Cal.Rptr. 176, 475 P.2d 208]).

### Contentions

Petitioner contends that Penal Code, section 602, subdivision (j) is unconstitutional on its face because it is overly broad and vague; that even if a portion of the section is free from constitutional infirmity, the trial court may have found petitioner guilty by applying the invalid portion; that there is no evidence that petitioner violated the valid portion of the section, and his conviction under the section for the conduct disclosed by the record constitutes an unconstitutional abridgment of his rights under the First Amendment to the United States Constitution.

### Overbreadth, Vagueness and Conviction under Unconstitutional Portion

Penal Code, section 602 and its pertinent subdivision (j) read: "Every person who willfully commits a trespass by any of the following acts is guilty of a misdemeanor:

"• • • • • • • • • • • • • • • • • • • • •

"(j) Entering any lands, whether unenclosed or enclosed by fence, for the purpose of injuring any property or property rights or with the intention of interfering with, obstructing, or injuring any lawful business or occupation carried on by the owner of such land, his agent or by the person in lawful possession."

Petitioner's contentions concerning unconstitutional overbreadth and vagueness center upon the inclusion in subdivision (j) of the words "property rights." He asserts that these words can be interpreted to include the right of a private property owner to exclude absolutely anyone from his premises; that if these words were so interpreted, a person might suffer a conviction for entering land for the purpose of exercising lawful First Amendment activities; that, thus, the section is both overbroad and unconstitutionally vague.

It is fundamental, of course, that a statute will be construed to avoid unconstitutionality if that can reasonably be done (*In re Klor,* 64 Cal.2d 816, 821 [51 Cal.Rptr. 903, 415 P.2d 791] and cases cited), and we have little doubt that in a case in which these issues are appropriately

raised, a court will find the words "property rights" as used in subdivision (j) of Penal Code, section 602 to have a reasonably definite and accepted meaning and that it will limit the words to lawful property rights, that is, those property rights consistent with the First Amendment to the United States Constitution, (Cf. *In re Cox*, 3 Cal.3d 205, 223 [90 Cal.Rptr. 24, 474 P.2d 992]; *In re Bushman*, 1 Cal.3d 767, 773 [83 Cal.Rptr. 375, 463 P.2d 727].) But the issues of unconstitutional overbreadth and vagueness based on the statutory words "property rights" are not appropriately raised in this case, for the record establishes that these words in the statute played no part in petitioner's conviction.

■ In the disjunctive the statute makes it unlawful to enter land "for the purpose of injuring any property or property rights *or* with the intention of interfering with, obstructing or injuring any lawful business . . . carried on by the owner of such land, his agent or by the person in lawful possession." (Pen. Code, § 602, subd. (j); italics supplied.) Even if we were to assume the doubtful proposition that the clause including the words "property rights" is constitutionally infirm, it would not follow that petitioner's conviction should be set aside. That clause could be severed without distorting the purpose of the subdivision, and the clause "with the intention of interfering with, obstructing, or injuring any lawful business" would remain intact. ■ Even when one portion of a penal statute is constitutionally invalid, if the record demonstrates that the defendant was convicted under the remaining valid portion, his conviction will not be set aside. (See *Stromberg* v. *California*, 283 U.S. 359, 367-368 [75 L.Ed. 1117, 1122, 51 S.Ct. 532]; *In re Bell*, 19 Cal.2d 488, 498-499 [122 P.2d 22]; *In re Klor, supra*, 64 Cal.2d at pp. 821-822.)

■ This is not a case like *Bachellar* v. *Maryland*, 397 U.S. 564, 569-571 [25 L.Ed.2d 570, 574-576, 90 S.Ct. 1312] or *Shuttlesworth* v. *City of Birmingham*, 382 U.S. 87, 92 [15 L.Ed.2d 176, 180, 86 S.Ct. 211] or *In re Klor, supra*, 64 Cal.2d at page 822 in which it could not be determined whether the conviction was founded on the valid or invalid portion of the statute. Here the record demonstrates that defendant was convicted of willfully entering the property *with the intention of interfering with the lawful business* carried on by the owner. That is the offense with which petitioner was charged in the amended complaint (see quotation therefrom, *ante*), and, as we point out below, there is substantial evidence to support petitioner's conviction of the offense charged. Although petitioner asserts that there is nothing in the record to demonstrate that the trial court based its judgment on the evidence that he intended to interfere with the lawful business of the landowner, it is fundamental that a person cannot be convicted of an offense not charged (*In re Hess*, 45 Cal.2d 171, 174-175 [288 P.2d 5] and cases cited), and, it is presumed that official duty has been regularly performed. (Evid. Code, § 664.)

*Sufficiency of Evidence—Abridgment of*
*First Amendment Rights*

In his petition for habeas corpus upon which we issued the order to show cause, petitioner states as a fact: "At no time while on the premises did petitioner obstruct or interfere with the business being conducted on the Disneyland property." Thus petitioner insists that the "narrow" issue is whether Disneyland has an absolute right to ban all First Amendment conduct on its property. He complains that this "narrow issue" "so far has been ignored by all courts and opposing parties."

Undoubtedly the reason this issue has been ignored, if that be true, is that in stating that he did not obstruct or interfere with the business being conducted on the Disneyland property petititoner has misrepresented the facts as disclosed by the record and attempted to inject into the case an issue that simply is not presented.

The engrossed settled statement of the evidence discloses the following pertinent facts. The Disneyland parking lot is completely enclosed by a fence. At each entrance and at various places on the parking lot there are "No Trespassing" signs in clear view. Patrons must pay to park their cars on the parking lots. They are invited onto the enclosed parking lot only if they are going into the entertainment area.

About midmorning of January 9, 1971, petitioner and two other men in an automobile paid the required parking fee and entered the Disneyland parking lot. In the area under the monorail track adjacent to ticket booth number 5 they set up a table with signs and a can for donations for the purpose of gathering signatures and soliciting donations for an antipollution initiative. Five days earlier by telephone petitioner had requested permission to engage in this conduct, but Disneyland had denied permission, suggesting that such activity could be carried on outside the Disneyland property. Petitioner testified that he chose Disneyland to solicit signatures because it was an area that would provide access to large numbers of registered voters and that he set his table up at the specific location on the Disneyland property because it was an area that would be best suited for his purposes.

The area where the table was set up was the passenger unloading area for the tram transporting Disneyland patrons between the parking lot and the ticket booth area. The tram has three cars and is capable of carrying approximately 150 people. As a result of petitioner's activities, Mr. Wulf, supervisor of Disneyland security, "had to initiate action for the Tram to avoid the area by diverting the Tram offloading to another area."

Petitioner was several times asked to leave but refused to do so and left

only after he was issued a citation by an officer of the Anaheim Police Department.

As to the evidence that the offloading of the tram had to be diverted to another area as a result of petitioner's activities, petitioner states only that "there is no indication that the trial court based its decision on this testimony. Furthermore, the police report contained in the Clerk's Transcript . . . makes no mention of this fact."

There is, of course, every indication that the court based its decision on the testimony that offloading of the tram had to be diverted to another area as a result of petitioner's activities. Petitioner was charged with entering Disneyland's property with the intention of interfering with its lawful business, and the court found petitioner guilty of the charge. While the police report is contained in the clerk's transcript and makes no mention of the necessity of diverting the tram, there is no indication in the engrossed settled statement of the evidence that the police report was introduced into evidence, although the introduction of photographic exhibits is twice specifically mentioned. Thus, it is by no means certain that the trial court considered the police report, but even if it did, the absence therein of any mention of necessity of diverting the tram would constitute at most a conflict in the evidence which, of course, was a matter to be resolved by the trial court.

The testimony that it was necessary to divert offloading of the tram into another area because of petitioner's activities constitutes substantial evidence that he did interfere with Disneyland's lawful business. That petitioner knew that his conduct was substantially certain to result in such interference, the requisite intent, may be inferred from his deliberately entering the parking lot and engaging in the conduct disclosed after having requested and been denied permission to do so and from his refusal to leave when asked to do so. (See Pen. Code, § 21.) Thus, there is no total lack of proof of an element of the crime as would render the conviction violative of due process. (See *Adderley* v. *Florida*, 385 U.S. 39, 44 [17 L.Ed.2d 149, 154, 87 S.Ct. 242]; *In re Wallace, supra*, 3 Cal.3d at p. 293.)

■ Thus, the ultimate issue in the case is not whether Disneyland may prohibit all First Amendment activities on its property, nor even whether the state may do so. The issue is whether the state may enforce a penal statute making it a misdemeanor to enter private property with the intention of interfering with or obstructing the lawful business of the occupant. There is no question but that it can.

Although that case dealt with public property rather than private property, the language of the court in *Adderley* v. *Florida, supra*, 385 U.S. at

pages 47-48 [17 L.Ed.2d at p. 156] is apposite: "The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated. For this reason there is no merit to the petitioners' argument that they had a constitutional right to stay on the property, over the jail custodian's objections, because this 'area chosen for the peaceful civil rights demonstration was not only "reasonable" but also particularly appropriate . . . .' Such an argument has as its major unarticulated premise the assumption that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please. That concept of constitutional law was vigorously and forthrightly rejected in two of the cases petitioners rely on, *Cox* v. *Louisiana, supra,* at pages 554-555 and 563-564. We reject it again. The United States Constitution does not forbid a State to control the use of its own property for its own lawful nondiscriminatory purpose."

The very cases relied on by petitioner indicate that the First Amendment does not invalidate his conviction of the offense with which he was charged. Each of them points out that there was no proof of interference with the business of the land occupant and implies that if there had been, the result would have been different. (See *Diamond* v. *Bland,* 3 Cal.3d 653, 663-665 [91 Cal.Rptr. 501, 477 P.2d 733]; *In re Wallace, supra,* 3 Cal.3d at pp. 293-295; *In re Hoffman,* 67 Cal.2d 845, 850-852 [64 Cal.Rptr. 97, 434 P.2d 353]; see also *In re Lane,* 71 Cal.2d 872, 878 [79 Cal.Rptr. 729, 457 P.2d 561].) It is unnecessary therefore to consider whether Disneyland's parking lot may be distinguished from the private properties involved in the cases relied on by petitioner on the basis that payment of a fee was required for entrance or whether petitioner's activities in soliciting funds may be distinguished from the activities involved in those cases.

The order to show cause is discharged and the petition for writ of habeas corpus denied.

Gardner, P. J., and Gabbert, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied April 6, 1972. Peters, J., Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.