Filed 3/25/16

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARIO LOPEZ SOTO,<br><br>    Defendant and Appellant. | H042115<br>(Monterey County<br> Super. Ct. No. SS142200A) |

Defendant Mario Lopez Soto pleaded nolo contendere to driving with a blood alcohol content in excess of 0.08 percent (Veh. Code, § 23152, subd. (b)) and driving with a suspended license (*id*., § 14601.2, subd. (a)). He was placed on five years' felony probation. On appeal, he challenges the trial court's imposition of a probation condition requiring that he obtain permission from his probation officer or an order from the court prior to changing his residence from Monterey County or leaving the State of California. He also raises arguments pertaining to various fines and fees that were imposed during sentencing. For the reasons set forth below, we modify the order granting probation and affirm the order as modified.

### BACKGROUND

*Facts*[1]

On August 25, 2014, officers responded to a report of a possible violation of a protective order. Defendant's wife, the subject of the protective order, was aboard a Monterey-Salinas transit bus, and defendant was following the bus in a car.

---

[1] Since defendant pleaded nolo contendere, we take our facts from the probation report, which was based on a report prepared by the Marina Police Department.

Officers stopped defendant and noticed an odor of alcohol emanating from his car. They also saw beer cans in plain view on the car floor. Officers searched the car and found several empty beer cans, sealed beer cans, and an open, cold beer can in the car's center console. Defendant acknowledged that his wife was aboard the bus that he was following and indicated that he knew that there was a protective order in place. He told officers that he followed the bus in his car instead of riding in the same bus as his wife, because he thought that he would be in compliance with the protective order that way.

*Procedural History*

On October 28, 2014, defendant was charged by information with a count of driving under the influence of alcohol with prior convictions (Veh. Code, § 23152, subd. (a)), driving while having a blood alcohol content of 0.08 percent or higher with prior convictions (*id*., subd. (b)), driving when his privilege was suspended for a prior DUI conviction (*id*., § 14601.2, subd. (a)), driving with a suspended license (*id*., § 14601.5, subd. (a)), driving when his privilege was suspended or revoked (*id*., § 14601.1, subd. (a)), and violating a criminal protective order (Pen. Code, § 166, subd. (c)(1)).[2]

On January 22, 2015, defendant pleaded nolo contendere to driving with a blood alcohol content of 0.08 percent or higher with prior convictions (Veh. Code, § 23152, subd. (b)) and driving when his privilege was suspended for a prior DUI conviction (*id*., § 14601.2, subd. (a)). He also admitted his prior convictions. He stipulated to a factual basis for his plea on his waiver form, indicating that "[o]n or about August 25, 2014, [defendant] drove a motor vehicle while his BAC [blood alcohol content] was in excess of .08."

On March 19, 2015, the trial court suspended imposition of sentence and placed defendant on five years' formal probation. Defendant was ordered to "[n]ot change place

---

[2] Unspecified statutory references are to the Penal Code.

of residence from Monterey County or leave [the] State of California without permission of the probation officer or further order of the court." He objected to the imposition of this condition, arguing that it was an unconstitutional infringement on his right to interstate travel. Defendant also asserted that there was no "length [*sic*] with his state of residence with respect to the criminality involved in this particular case."

Defendant was also ordered to pay certain fines and fees as a condition of his probation. The court's minute order reflects that he was ordered to "[p]ay a fine of $390.00 plus penalty assessments, restitution fine and administrative fees for a total of $2,104.00. [¶] (Penalty assessments total $1,209.00 and include: (1) $390.00 per PC 1464(a)(1); (2) $273.00 per GC 76000(a)(1); (3) $78.00 per PC 1465.7; (4) $195.00 per GC 70372; (5) $78.00 per GC 76000.5; (6) $39.00 per GC 76104.6(a)(1); and (7) $156.00 per GC 76104.7.) Additional fees total $125.00 and include: (1) $25.00 per VC23645(a); and (2) $100.00 per VC23649(a). Administrative fees total $80.00 and include [(1)] $25.00 per PC 1463.07; and (2) $55.00 per PC 1205(d). Restitution fine is $300.00 per PC 1202.4(b)." Defendant was also ordered to "[p]ay an additional restitution fine of $150.00 to the State Restitution Fund for count 3. (PC 1202.4(b).)"

Defendant appealed.

### DISCUSSION

On appeal, defendant challenges the validity of the probation condition requiring that he obtain permission from his probation officer "or further order of the court" before changing his place of residence from Monterey County or leaving the State of California. He also challenges the trial court's imposition of certain fines and fees and argues that some of the fines and fees cannot be imposed as conditions of probation. We address his claims regarding the change of residence probation condition first.

1. *Probation Condition*

On appeal, defendant challenges the imposition of the probation condition requiring that he obtain approval before changing his residence from Monterey County or

3

leaving the State of California on the grounds that the condition is not reasonably related to his crime or to future criminality and that the condition is unconstitutionally overbroad. We address his claim that the condition was unreasonable first.

Under *Lent*, a condition is "invalid [if] it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*People v. Lent* (1975) 15 Cal.3d. 481, 486.) "This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term." (*People v. Olguin* (2008) 45 Cal.4th 375, 379 (*Olguin*).)

Here, we find that the challenged condition satisfies the first two prongs of the *Lent* test. There is nothing in the record to indicate that the crimes that he was convicted of, driving with a suspended license and driving with a blood alcohol content greater than 0.08 percent, are reasonably related to where he lives, or can be influenced by whether he leaves the state. Further, the condition relates to conduct which is not in itself criminal. There is nothing inherently illegal in either moving out of the county or taking an out of state trip.

At issue is the last prong of the *Lent* test, whether the condition is reasonably related to defendant's future criminality. Defendant opines that we should follow the rationale set forth in *People v. Bauer* (1989) 211 Cal.App.3d 937. The *Bauer* court considered a similarly worded probation condition requiring that the defendant's residence be subject to his probation officer's approval. After reviewing the record, the court concluded that there was nothing in the probation report or anywhere else that suggested that defendant's home life somehow contributed to the crime of which he was convicted or would be related to his future criminality. (*Id*. at p. 944.) Accordingly, the *Bauer* court concluded that the condition failed the test articulated in *Lent* and struck the probation condition.

4

*Bauer* was decided before our Supreme Court's decision in *Olguin*, *supra*, 45 Cal.4th 375, which held that a "condition of probation that enables a probation officer to supervise his or her charges effectively is . . . 'reasonably related to future criminality.' " (*Id*. at pp. 380-381.) In *Olguin*, the defendant challenged a condition of probation requiring him to notify his probation officer of the presence of any pets at his residence. In part, the defendant challenged the condition on reasonableness grounds. The Supreme Court rejected the defendant's arguments, noting that "[t]he condition requiring notification of the presence of pets is reasonably related to future criminality because it serves to inform and protect a probation officer charged with supervising a probationer's compliance with specific conditions of probation." (*Id*. at p. 381.)

*Olguin* noted that proper supervision included enabling the probation officer to make unannounced visits and searches of the probationer's home. The safety of the probation officer when conducting these visits and searches would therefore be pertinent to future criminality. *Olguin* held that "the protection of the probation officer while performing supervisory duties is reasonably related to the rehabilitation of a probationer for the purpose of deterring future criminality." (*Olguin*, *supra*, 45 Cal.4th at p. 381.) *Olguin* concluded that the defendant failed to show that the condition was unreasonable.

*Olguin*, however, is distinguishable. The condition at issue in *Olguin* required the defendant to *notify* his probation officer if he had pets; it did not require the defendant to obtain *approval or permission*. Several times, the *Olguin* court distinguished the probation condition at issue there from a condition that would require the defendant to obtain *approval* before having a pet. (*Olguin*, *supra*, 45 Cal.4th at pp. 383, 385.)

Additionally, "[n]ot every probation condition bearing a remote, attenuated, tangential, or diaphanous connection to future criminal conduct can be considered reasonable." (*People v*. *Brandão* (2012) 210 Cal.App.4th 568, 576.) We do not believe that *Olguin* compels a finding of reasonableness for every probation condition that may potentially assist a probation officer in supervising a probationer. (See, e.g., *In re J.B*.

5

(2015) 242 Cal.App.4th 749, 758 [noting that "[t]he fact that a search condition would facilitate general oversight of an individual's activities is insufficient to justify an open-ended search condition permitting review of all information contained or accessible on minor's smart phone or other electronic devices"].)

Here, the record does not support the trial court's conclusion that the probation condition is reasonably related to defendant's crimes. During the sentencing hearing, the court justified the probation condition as "more than reasonable" based on defendant's history of alcohol abuse and noted that it wanted the probation officer to be able to ensure that all of the probation terms, including treatment, could be satisfied regardless of where defendant lived.

However, like the *Bauer* defendant, there is nothing in the record to indicate that defendant's living situation contributed to his crime or would contribute to his future criminality. The only mention of defendant's living situation is contained in the probation report, which indicated that defendant had a stable residence and was living with his brother. In sum, there is nothing to suggest that leaving Monterey County or the State of California would have an effect on defendant's rehabilitation. Based on the record before us, we do not find that the condition has any relation to his crime or to future criminality.[3] Therefore, under the facts of defendant's case, we find that the condition is unreasonable and must be stricken.[4]

[3] We note that there may be certain situations where obtaining the probation officer or court's approval before changing residence or leaving the state may be required for adequate supervision of the defendant and may be reasonably related to future criminality. However, facts that would support such a conclusion are not present in defendant's case.

[4] Defendant also challenges the condition as unconstitutionally overbroad. As defendant notes, the California Supreme Court is presently considering the constitutionality of a similarly worded probation condition in *People v. Schaeffer* (2012) 208 Cal.App.4th 1 (rev. granted Oct. 31, 2012, S205260). The condition at issue there required the defendant to " '[r]eside at a residence by the Probation Officer and not move without his/her prior approval.' " (*Id.* at p. 4.) Because we strike the condition as (continued)

2. *Penalty Assessment Under Government Code section 76000*

According to the minute order, defendant was ordered to pay $273 under Government Code section 76000, subdivision (a)(1). He argues that this fine should be reduced to $195 as provided under Government Code section 76000, subdivision (e).

Defendant did not object to the imposition of the $273 fine under Government Code section 76000, subdivision (a)(1). However, he claims that his argument is not forfeited because imposition of the $273 fine constitutes an unauthorized sentence. We agree that failure to raise an objection on this basis below does not bar his claim on appeal. (*People v. Smith* (2001) 24 Cal.4th 849, 852.)

Government Code section 76000, subdivision (a)(1) provides that "[e]xcept as otherwise provided elsewhere in this section, in each county there shall be levied an additional penalty in the amount of seven dollars ($7) for every ten dollars ($10), or part of ten dollars ($10), upon every fine, penalty, or forfeiture imposed and collected by the courts for all criminal offenses, including all offenses involving a violation of the Vehicle Code or any local ordinance adopted pursuant to the Vehicle Code." Here, defendant was ordered to pay a base fine of $390 under Vehicle Code section 23550, subdivision (a). Seventy percent of this $390 base fine is $273.

Defendant, however, argues that Government Code section 76000, subdivision (e), not subdivision (a)(1), applies. Government Code section 76000, subdivision (e) provides that "[t]he seven-dollar ($7) additional penalty authorized by subdivision (a) shall be reduced in each county by the additional penalty amount assessed by the county for the local courthouse construction fund established by Section 76100 as of January 1, 1998, when the money in that fund is transferred to the state under Section 70402." The statute further clarifies that "[t]he amount each county shall charge as an additional

---

unreasonable, we need not address defendant's claims regarding the condition's constitutionality.

7

penalty under this section shall be as follows," with Monterey County listed as "$5.00." Accordingly, defendant claims that his $390 base fine should have been subjected to a 50 percent penalty ($5 for every $10), for a total penalty of $195.

The language of Government Code section 76000, subdivision (e) appears to mandate that a penalty under Government Code section 76000, subdivision (a)(1) be reduced from $7 to $5 for every $10 imposed. However, Government Code section 76000, subdivision (e) references Government Code section 76100, which provides that the board of supervisors of a county "*may* establish" a courthouse construction fund. (Gov. Code, § 76100, subd. (a), italics added.) In other words, establishing a courthouse construction fund is not mandatory.

The People argue that Monterey County has not established a courthouse construction fund and have filed a request for judicial notice of the Statewide Civil Fee and Local Fee Schedule. (Evid. Code, §§ 452, subd. (c), 459.) The People claim that judicial notice is appropriate, because the fee schedule shows that only three counties, Riverside, San Bernardino, and San Francisco, have local courthouse construction funds. We grant the People's request for judicial notice. However, the appendix does not reflect that Riverside, San Bernardino, and San Francisco are the only counties with courthouse construction funds.

The appendix states that "[u]nder the Uniform Civil Fee legislation, the standard distributions to the State Court Facilities Construction Fund [(SCFCF)] are $20, $25 and $35 depending on the level and type of filing. In Riverside, San Bernardino and San Francisco the distribution to the SCFCF is reduced to offset, to the extent possible, the local courthouse construction surcharge." Riverside, San Bernardino, and San Francisco are the three counties that specially permit local courthouse construction surcharges for courthouse retrofitting and rehabilitation. (Gov. Code, §§ 70622, 70624, 70625.) Since these counties deviate from the norm, the appendix lists these counties separately to state the specific fees and distributions that will be made.

8

Government Code section 70402, subdivision (a), which governs the transfer of specified funds to the State Court Facilities Construction fund, acknowledges these additional surcharges as well as the fact that other counties may set up courthouse construction funds, noting that "[a]ny amount in a county's courthouse construction fund established by Section 76100, a fund established by Section 70622 in the County of Riverside, a fund established by Section 70624 in the County of San Bernardino, and a fund established by Section 70625 in the City and County of San Francisco, shall be transferred to the State Court Facilities Construction Fund" by a certain date. In sum, the appendix does not demonstrate that these three counties are the only counties with a courthouse construction fund.

The People do not furnish any other information to show that Monterey County has a local courthouse construction fund. Accordingly, we are unable to determine if the penalty imposed was unauthorized based on the current record. The amount at issue here is de minimis. Calculating the penalty as 50 percent versus 70 percent would result in a penalty of $195 compared with the original penalty of $273, a difference of only $78. Remanding the matter to the trial court would therefore only serve to increase the costs to the parties and the taxpayers. Therefore, in the interest of judicial economy, and in this case only, we will assume that Monterey County has a local courthouse construction fund and will reduce the penalty to $195. However, we note that in future proceedings the trial court should make the appropriate, underlying factual findings when imposing a penalty under Government Code section 76000.

3. *Administrative Fee Under Section 1463.07*

Next, defendant challenges the imposition of the $25 administrative fee imposed under section 1463.07. The People concede that this fee was erroneously imposed, because the fee applies only to those persons who are "arrested and released on his or her recognizance upon conviction of any criminal offense related to the arrest other than an infraction." (§ 1463.07.) We find the People's concession to be appropriate, since the

9

record reflects that defendant was never released on his own recognizance. Accordingly, the $25 fine under section 1463.07 was unauthorized and should be stricken.

4. *Installment Account Fee Under Section 1205, Subdivision (e)*

Defendant claims the trial court was not authorized to impose a $55 administrative fee for installment accounts under section 1205, subdivision (e).[5]

Section 1205 "applies to any violation or any of the codes or statutes of this state punishable by a fine or by a fine and imprisonment." (§ 1205, subd. (c).) Defendant's conviction of violating Vehicle Code section 23152 is punishable by a fine and imprisonment. (Veh. Code, § 23550, subd. (a).) Here, defendant was ordered to pay the $390 minimum fine described in Vehicle Code section 23550, subdivision (a).

Section 1205, subdivision (a) provides that a judgment that a defendant pay a fine may also direct that the defendant be imprisoned until the fine is satisfied. Subdivision (a) specifies that "[w]hen the defendant has been convicted of a misdemeanor, a judgment that the defendant pay a fine may also direct that he or she pay the fine within a limited time or in installments on specified dates, and that in default of payment as stipulated he or she be imprisoned in the discretion of the court either until the defaulted installment is satisfied or until the fine is satisfied in full; but unless the direction is given in the judgment, the fine shall be payable."[6]

---

[5] The People note that section 1205 was amended on June 28, 2012, and section 1205, subdivision (d) was relettered as subdivision (e). (Stats. 2012, ch. 49, § 1.) Therefore, although the minute order and the presentence probation report indicate that the fine was imposed under section 1205, subdivision (d), both parties agree that the fine was actually imposed under section 1205, subdivision (e). To clarify, we will modify the judgment to reflect that the fee was imposed under section 1205, subdivision (e), not subdivision (d).

[6] Installments are also mentioned in section 1205, subdivision (b), which provides: "Except as otherwise provided in case of fines imposed, as a condition of probation, the defendant shall pay the fine to the clerk of the court, or to the judge if there is no clerk, unless the defendant is taken into custody for nonpayment of the fine, in which event payments made while he or she is in custody shall be made to the officer who holds the (continued)

Section 1205, subdivision (e) describes the fees that may be imposed under this section. It provides in pertinent part that a defendant shall "pay to the clerk of the court or the collecting agency a fee for the processing of installment accounts. This fee shall equal the administrative and clerical costs, as determined by the board of supervisors, or by the court, depending on which entity administers the account. The defendant shall pay to the clerk of the court or the collecting agency the fee established for the processing of the accounts receivable that are not to be paid in installments. The fee shall equal the administrative and clerical costs, as determined by the board of supervisors, or by the court, depending on which entity administers the account, except that the fee shall not exceed thirty dollars ($30)." (§ 1205, subd. (e).)

Accordingly, section 1205, subdivision (e) limits those fees collected for processing of accounts receivable that are *not* to be paid in installments to $30. In contrast, section 1205, subdivision (e) does not provide a specific limit on the fees collected for installment accounts.

Defendant argues that the $30 limitation applies, because there is nothing in the record to indicate that the trial court's judgment constituted a judgment on a misdemeanor ordering him to make payments of his fine in installments. In other words, defendant claims that section 1205, subdivision (e)'s fee for installment accounts should

_____

defendant in custody, and all amounts paid shall be paid over by the officer to the court that rendered the judgment. The clerk shall report to the court every default in payment of a fine or any part of that fine, or if there is no clerk, the court shall take notice of the default. If time has been given for payment of a fine or it has been made payable in *installments*, the court shall, upon any default in payment, immediately order the arrest of the defendant and order him or her to show cause why he or she should not be imprisoned until the fine or installment is satisfied in full. If the fine or *installment* is payable forthwith and it is not paid, the court shall, without further proceedings, immediately commit the defendant to the custody of the proper officer to be held in custody until the fine or *installment* is satisfied in full." (Italics added.)

11

be limited to the installment accounts imposed on misdemeanor defendants as described in section 1205, subdivision (a).

The People opine that defendant forfeited the issue because he failed to object below on the basis that he had the ability to pay the fines imposed on him without an installment plan. (See *People v. McCullough* (2013) 56 Cal.4th 589, 597.) As articulated by the California Supreme Court in *People v. Scott* (1994) 9 Cal.4th 331, 351-356, "claims deemed waived on appeal [absent an objection] involve sentences which, though otherwise permitted by law, were imposed in a procedurally or factually flawed manner." (*Id.* at p. 354.) For example, fees that are otherwise permitted but "were procedurally flawed (for absence of notice, a hearing or a finding) and factually flawed (for absence of evidence that the defendant had the ability to pay)" are not subject to the unauthorized sentence exception. (*People v. Valtakis* (2003) 105 Cal.App.4th 1066, 1072.)

The People argue that imposition of the $55 fee under section 1205 is lawful and refute defendant's claim that installment accounts are only applicable to misdemeanor cases. The People note that our Supreme Court in *In re Antazo* (1970) 3 Cal.3d 100 concluded that trial courts must give indigent defendants options, as an alternative to imprisonment, to repay fines and penalty assessments. Further, appellate courts have construed that an alternative that can be considered by the trial court is a requirement that the defendant pay the fine or penalty assessment in installments. (See *In re Fry* (1971) 19 Cal.App.3d 177, 181 ["*Antazo* recognizes that, as an alternative to imprisonment, 'there are a variety of ways in which the state may fine the indigent offender' (e.g., by collecting the fine in installments)"].) Therefore, the People insist that contrary to defendant's claims, installment accounts can be imposed on indigent felony defendants. And, the People maintain that we may presume that the trial court inferred defendant to be indigent based on the probation report, which indicated he had minimal financial capabilities.

We reject the People's argument of forfeiture, which assumes without evidence that defendant was ordered to pay his fines in installments. Defendant does not complain that the installment account fee suffers from a procedural or factual flaw in its imposition, which would have been forfeited absent a failure to object. Rather, defendant argues that the installment account fee was unauthorized because a condition precedent to the imposition of the fee—that he was required to pay the fee in installments—did not exist. Even if we assume as true the People's argument that the installment account fee can properly be imposed on felony defendants, the $55 fee imposed under section 1205, subdivision (e) is unauthorized unless defendant was required to pay his fines in installments since the statute expressly limits fees for non-installment accounts receivables to $30. Failure to object on this basis below does not forfeit his argument on appeal. (*People v. Smith*, *supra*, 24 Cal.4th at p. 852.)

In this case, there is nothing in the record to indicate that defendant was ordered to pay his fines in installments. During the sentencing hearing, the court did not state that it was ordering defendant to pay his fines in installments. In fact, the court ordered defendant to "[p]ay your fines within three days, contacting the revenue division within three days of your release from custody for payment arrangements." This suggests that defendant was *not* ordered to pay his fines in installments. Additionally, the probation report did not indicate that it was recommending that the fine be paid in installments. And, neither the probation condition imposing the fee nor the probation report described the fee imposed under section 1205, subdivision (e) as an installment account fee. Rather, the probation report recommended imposing the $55 fee as an "administrative" fee.

Accordingly, since it does not appear that defendant was ordered to pay his fine in installments, we find that the $55 fee imposed under section 1205, subdivision (e) was unauthorized and reduce the fee to $30.

13

5. *Restitution Fine Under Section 1202.4, Subdivision (b)*

Below, the trial court imposed a restitution fine of $300 under section 1202.4, subdivision (b).[7]  The trial court also imposed an "additional restitution fine of $150.00" for count 3, driving while his privilege was suspended (Veh. Code, § 14601.2, subd. (a)). Defendant argues that all penal consequences stemming from his misdemeanor conviction for driving while his privilege was suspended, including the $150 restitution fine, must be stricken or stayed under section 654.

Defendant did not object to the imposition of the two restitution fines, but he does not forfeit his challenge on appeal.  When a court imposes multiple punishments in violation of section 654, it acts in excess of its jurisdiction and imposes an unauthorized sentence that can be challenged for the first time on appeal.  (*People v. Le* (2006) 136 Cal.App.4th 925, 931 (*Le*).)

Section 654, subdivision (a) provides in pertinent part that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

In *In re Hayes* (1969) 70 Cal.2d 604 (*Hayes*), our Supreme Court held that section 654 did not bar a defendant from being separately punished for driving with knowledge of a suspended license and driving while under the influence.  (*Hayes*, *supra*, at p. 611.)  *Hayes*, however, has been overruled by *People v. Jones* (2012) 54 Cal.4th 350 (*Jones*).  *Jones* held that "[s]ection 654 prohibits multiple punishment for a single physical act that violates different provisions of law."  (*Id*. at p. 358.)

---

[7] The minute order does not specify that this $300 restitution fine was imposed for count 2, driving a vehicle with a blood alcohol content of more than 0.08 percent (Veh. Code, § 23152, subd. (b)).  However, since it imposed an additional restitution fine for count 3, it seems appropriate to presume that the $300 fine was imposed for count 2.

14

Defendant's convictions for driving with a suspended license and driving with a blood alcohol content of 0.08 percent or more both arose from the single physical act of driving on August 25, 2014. Punishing defendant for both of these convictions would therefore violate section 654. (*Jones*, *supra*, 54 Cal.4th at p. 358.)

The People argue that it is technical error to impose a separate restitution fine for the two convictions and defendant should have been subject to only one fine. (*People v. Sencion* (2012) 211 Cal.App.4th 480.) However, the People contend that defendant was not prejudiced by the imposition of the two fines, because the total restitution fine imposed was $450, well-within the statutory range of $300 to $10,000 for felony convictions. (§ 1202.4, subd. (b)(1).)

Defendant, however, is not claiming that he was prejudiced by the trial court's order of restitution. He is arguing that the restitution fine was unauthorized and an act in excess of the court's jurisdiction because it violated section 654. "An unauthorized sentence is just that. It is not subject to a harmless error analysis. Nor does it ripen into a sentence authorized by law with the passage of time." (*In re Birdwell* (1996) 50 Cal.App.4th 926, 930.)

In *Le*, *supra*, 136 Cal.App.4th 925, this court determined that a restitution fine imposed under section 1202.4 was a "punishment" and a "criminal penalty" and therefore subject to section 654. (*Le*, *supra*, at p. 933.) *Le* held that the trial court violated section 654's ban on multiple punishments when it considered a felony conviction that should have been stayed under section 654 when calculating the defendant's restitution fine under section 1202.4. (*Le*, *supra*, at p. 934.)

Defendant opines that section 654's ban on multiple punishments is applicable here, even though the trial court suspended imposition of sentence and placed him on probation. He cites to *People v. Tarris* (2009) 180 Cal.App.4th 612 (*Tarris*), where the trial court suspended the defendant's sentence and placed him on probation, ordering him to pay restitution fines under Health and Safety Code section 25189.5 as a condition of

15

probation for two offenses when one of the offenses should have been stayed under section 654. (*Tarris*, *supra*, at pp. 627-628.) *Tarris* noted that under section 1203.1, subdivision (a)(1), when a trial court grants probation it may " 'fine the defendant in a sum not to exceed the maximum fine provided by law in the case.' " By law, section 654 bars multiple punishments for a single act and fines constitute punishment; therefore, *Tarris* held that the trial court improperly imposed the restitution fine for both counts. (*Tarris*, *supra*, at p. 628.)

Applying the reasoning set forth in *Le* and *Tarris*, we find that the trial court violated section 654's ban on multiple punishments when it imposed a $150 restitution fine under section 1202.4 for defendant's conviction for driving with a suspended license. As articulated in *Tarris*, although the trial court suspended imposition of sentence and placed defendant on probation, it could not impose, as a condition of probation, fines that exceeded the maximum provided by law.[8] Therefore, we strike the $150 restitution fine.

6. *Probation Condition Requiring Payment of Various Fees*, *Surcharges*, *and Assessments*

Defendant argues that the trial court erroneously ordered certain payments imposed under Government Code sections 70372, 76000, 76000.5, 76104.6, 76104.7 and Penal Code sections 1205 and 1465.7 as conditions of probation.[9] Instead, defendant insists that these fines and fees should have been imposed as separate orders.[10]

---

[8] Section 1202.4, subdivision (m) provides that "[i]n every case in which the defendant is granted probation, the court shall make the payment of restitution fines and orders imposed pursuant to this section a condition of probation. . . ."

[9] Defendant also challenges the imposition of the fine imposed under section 1463.07 as a condition of probation. However, we have already struck the fine imposed under section 1463.07 as an unauthorized sentence. Therefore, we need not consider whether the fine was properly imposed as a condition of probation.

[10] Defendant's failure to contest the imposition of these fees as probation conditions does not forfeit his argument on appeal, because his claim is that imposition of these fees as a condition of his probation amounts to an unauthorized sentence. Again, (continued)

16

Under section 1203.1, trial courts have broad discretion to impose reasonable conditions of probation that it "may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from the breach, and generally and specifically for the reformation and rehabilitation of the probationer . . . ." (§ 1203.1, subd. (j).)

Some fines, including restitution fines, are statutorily required to be imposed as conditions of probation. (§§ 1202.4, subd. (m), 1203.1, subd. (a)(1) & (2).) The fines and fees challenged by defendant on appeal are not expressly mentioned in a statute as appropriately imposed as a probation condition.

Courts have examined whether other fines and fees may properly be imposed as conditions of probation. Routinely, courts have determined that probation supervision costs imposed under section 1203.1b cannot be made a condition of probation for several reasons. (*People v. Hall* (2002) 103 Cal.App.4th 889; *People v. Hart* (1998) 65 Cal.App.4th 902, 907.) First, under section 1203.1b, a court must first make an inquiry into the defendant's ability to pay and issue a separate order for the payment of such costs. Second, section 1203.1b, subdivision (d) provides that the order to pay probation supervision fees cannot be enforced by contempt proceedings.

Payment of attorney fees and costs have also been deemed to be inappropriate conditions of probation. (*People v. Hart*, *supra*, 65 Cal.App.4th at pp. 906-907.) "Attorney fees are constitutionally proscribed as probation conditions because they would 'exact[] a penalty for the exercise of a constitutional right. Thus, the trial court may order defendant to pay for costs of probation and attorney fees, but may not condition defendant's grant of probation upon payment thereof.' " (*People v. Bradus* (2007) 149 Cal.App.4th 636, 642.)

unauthorized sentences may be corrected on appeal at any time. (*People v. Scott*, *supra*, 9 Cal.4th at p. 354.)

17

In *People v. Pacheco* (2010) 187 Cal.App.4th 1392 (*Pacheco*), disapproved on other grounds by *People v. Trujillo* (2015) 60 Cal.4th 850, 858, footnote 5 and *People v. McCullough*, *supra*, 56 Cal.4th at page 599, this court determined that a court security fee imposed under section 1465.8 was "collateral to [defendant's] crimes and punishment" and should not be made a condition of probation. (*Pacheco*, *supra*, at p. 1402.) *Pacheco* noted that "[o]ne reason for the distinction between fines that may be imposed as probation conditions and those that may not is that probation 'should be oriented towards rehabilitation of the defendant and not toward the financing of the machinery of criminal justice.' " (*Id.* at p. 1403.) A defendant may be imprisoned for violating a probation condition but not for violating an order to pay fees or costs. (*Ibid.*) Therefore, the "nonpunitive purpose of the court security fee squarely places it among those fines and fees that are collateral to the crime and the consequent punishment for its commission." (*Ibid.*) Accordingly, we held that the payment of collateral costs like court security fees should be imposed as a separate order at judgment, not as a condition of probation. (*Ibid.*)

In *People v. Kim* (2011) 193 Cal.App.4th 836 (*Kim*), this court extended the reasoning set forth in *Pacheco* and held that a court facilities assessment imposed under Government Code section 70373 should also be separately imposed.

The People concede that the fee imposed under section 1205, subdivision (e) cannot be properly imposed as a condition of probation. Like the court security fee (§ 1465.8) and court facilities assessment (Gov. Code, § 70373) contemplated in *Pacheco* and *Kim*, the installment account fee imposed under section 1205 is collateral to defendant's crimes and punishment. The fee imposed under section 1205 correlates to the administrative and clerical costs associated with setting up accounts receivables and installment accounts. (§ 1205, subd. (e).) We find the People's concession to be appropriate and conclude that the fee imposed under section 1205 must be imposed as a separate order at judgment, not as a condition of probation.

18

The six other fees, assessments, and surcharges challenged by defendant require a different analysis. Unlike the fee imposed under section 1205, the six other challenged payment obligations are "assessments, surcharges, and penalties parasitic to an underlying fine" that can increase the fine by a specified percentage.[11] (*People v. Voit* (2011) 200 Cal.App.4th 1353, 1374 (*Voit*).) These include the following fees and fines that defendant challenges on appeal: (1) the 20 percent state surcharge (§ 1465.7), (2) the 30 percent state courthouse construction penalty (Gov. Code, § 70372), (3) the 70 percent additional penalty (*id.*, § 76000, subd. (a)(1)), (4) the 20 percent additional penalty if authorized by the county board of supervisors for emergency medical services (*id.*, § 76000.5, subd. (a)(1)), (5) the 10 percent additional penalty for implementing the DNA Fingerprint, Unsolved Crime and Innocence Protection Act (*id.*, § 76104.6, subd. (a)(1)), and (6) the 10 percent additional state-only penalty to finance the Department of Justice forensic laboratories (*id.*, § 76104.7).

The six challenged parasitic fees, assessments, and surcharges have been described as punitive by multiple courts. For example, this court described these parasitic fees, assessments, and surcharges as "punitive fundraising measures" in *Voit*, *supra*, 200 Cal.App.4th at page 1374.

Further, some of the challenged fees and fines have been described as "punitive" in other contexts. The court in *People v. Batman* (2008) 159 Cal.App.4th 587 (*Batman*) held that the DNA penalty assessment imposed under Government Code section 76104.6 was punitive in nature. *Batman* noted that "[u]nlike the court security fee and the criminal justice administration and booking fee, the DNA penalty assessment is explicitly designated a penalty; it is calculated in direct proportion to other fines, penalties, and forfeitures imposed; it is collected using the same provision for collecting the state

---

[11] In defendant's case, the underlying fine was the $390 base fine for his conviction imposed under Vehicle Code section 23550, subdivision (a).

19

penalty assessment; and it will be used primarily for future law enforcement purposes." (*Batman*, *supra*, at p. 591.)

Additionally, *People v. High* (2004) 119 Cal.App.4th 1192 (*High*) held that the courthouse construction penalty (Gov. Code, § 70372) and the state surcharge (§ 1465.7) were punitive. "The surcharge mandated by Penal Code section 1465.7, like its companion penalty assessment set forth in section 1464, is a 'garden variety' fine calculated on the size and severity of the base fine imposed. It does not purport to reimburse government for an expense incurred. Rather, the revenue collected is deposited in the State General Fund." (*High*, *supra*, at p. 1197.) *High* noted that the penalty had a "punitive as well as a fundraising purpose." (*Id.* at p. 1199.) In coming to this conclusion, *High* opined that "[t]he penalty imposed tracks the seriousness of the underlying offense and its base penalty. The prospect of its imposition therefore has a similar deterrent effect to that of punitive statutes generally. It thereby ' "promote[s] the traditional aims of punishment—retribution and deterrence." ' " (*Id.* at p. 1198.)

*People v. Sharret* (2011) 191 Cal.App.4th 859 (*Sharret*) applied a similar analysis and concluded that the criminal laboratory analysis fee (Health & Saf. Code, § 11372.5) was punitive and subject to section 654. Health and Safety Code section 11372.5 provides that individuals convicted of certain drug offenses "shall pay a criminal laboratory analysis fee in the amount of fifty dollars ($50) for each separate offense. The court shall increase the total fine necessary to include this increment." *Sharret* concluded that the criminal laboratory analysis fee was punitive for a multitude of reasons: it described itself as a fine, was imposed only upon conviction of a criminal offense involving drugs and has no application in the civil context, was proportionate to the defendant's culpability because it applied to each separate conviction, was mandatory and had no ability to pay requirement, the funds collected went toward law enforcement purposes, there was no language indicating that it was exempt from section 654, and when the mandatory penalty and assessments were added the total fine was substantially

20

greater than the court security fee deemed to be nonpunitive in *People v. Alford* (2007) 42 Cal.4th 749. (*Sharret*, *supra*, at pp. 869-870.)

Voit, *Batman*, *High*, and *Sharret* do not concern the specific issue contemplated here. *Voit* discussed the aforementioned fees, surcharges, and assessments in the context of discerning which penalty was applicable to the defendant, since some of the penalties had been enacted after defendant committed his crime. (*Voit*, *supra*, 200 Cal.App.4th at p. 1374.) *Batman* and *High* discussed certain penalties in the context of whether their imposition would violate the constitutional prohibition against ex post facto laws. (*Batman*, *supra*, 159 Cal.App.4th at pp. 589-590; *High*, *supra*, 119 Cal.App.4th at p. 1197.) Finding that these penalties were punitive in nature, *Batman* and *High* concluded that the penalties could not be properly imposed on the defendants since they had committed their crimes after the statutes implementing the penalties were enacted. (*Batman*, *supra*, at p. 591; *High*, *supra*, at p. 1199.) *Sharret* contemplated whether the criminal laboratory analysis fee, a fee not imposed in defendant's case, was punitive for the purposes of section 654. (*Sharret*, *supra*, 191 Cal.App.4th at p. 870.)

However, we find the rationale employed by *Batman*, *High*, and *Sharret* to be applicable to our analysis. The payment obligations that defendant challenges are markedly different than the court security fee (§ 1465.8) and the court facilities fee (Gov. Code, § 70373) deemed to be collateral to the defendants' convictions in *Pacheco* and *Kim*. (*Pacheco*, *supra*, 187 Cal.App.4th at p. 1402; *Kim*, *supra*, 193 Cal.App.4th at p. 843.)

First, *Batman* and *High* specifically concluded that the DNA penalty assessment (Gov. Code, § 76104.6) and the courthouse construction penalty (*id*., § 70372), both of which defendant challenges here, were punitive for the purposes of the prohibition against ex post facto laws. It strains credulity that these assessments, deemed punitive for the purposes of the prohibition against ex post facto laws, can be considered merely collateral to the defendant's crimes and rehabilitation. As described in *High*, the

21

courthouse construction penalty " ' "promote[s] the traditional aims of punishment—retribution and deterrence." ' " (*High*, *supra*, 119 Cal.App.4th at p. 1198.)  The same rationale applies to the DNA penalty assessment deemed punitive in *Batman*.  Since these penalty assessments promote the traditional aims of punishment, it follows that they are reasonably imposed as conditions of probation.  (§ 1203.1, subd. (j) [trial courts have discretion to impose reasonable conditions of probation].)

As for the four other fines challenged by the defendant—the penalty assessments imposed under Government Code sections 76000, 76000.5, 76104.7, and Penal Code section 1465.7—we find that a review of the statutes compels us to conclude that these penalty assessments are also punitive under the same rationale employed by the courts in *Batman*, *High*, and *Sharret*.  First, all of the challenged penalty assessments are mandatory and only applicable in the context of criminal cases.[12]  Second, the challenged assessments are all correlative to the seriousness of the crime, because the imposed penalties all constitute a proportionate percentage of the base fine.  Therefore, the more criminally culpable a defendant is, as reflected in their base fine, the greater the penalty assessment imposed under the aforementioned statutes.  Third, none of these challenged penalty assessments have an ability to pay requirement.

Based on the foregoing, we conclude that unlike the court security fee and the court facilities assessment contemplated in cases like *Pacheco* and *Kim*, the penalty assessments challenged by defendant are punitive and serve the purpose of promoting retribution and deterrence and are related to defendant's crimes.  The punitive nature of the challenged penalty assessments renders their payment a reasonable condition of

---

[12] We note that the additional penalty on fines for support of emergency medical services (Gov. Code, § 76000.5) is not applicable unless the county board of supervisors elects to levy the additional penalty.  Presumably, the fine is mandatory in Monterey County since the penalty was imposed in defendant's case.

22

probation. We therefore find no error with the trial court's imposition of the six penalty assessments described above as conditions of probation.

## DISPOSITION

The order granting probation is modified as follows: (1) the probation condition requiring defendant to "[n]ot change place of residence from Monterey County or leave [the] State of California without permission of the probation officer or further order of the court" (condition No. 3) is stricken, (2) the penalty assessment imposed under Government Code section 76000 is reduced to $195, (3) the $25 administrative fee imposed under Penal Code section 1463.07 is stricken, (4) the $55 fee imposed under Penal Code section 1205, subdivision (d) is reduced to $30 and is clarified to be imposed under Penal Code section 1205, subdivision (e), (5) payment of the $30 fee imposed under Penal Code section 1205, subdivision (e) is clarified to be imposed as a separate court order, and (6) the $150 restitution fine imposed under Penal Code section 1202.4 for count 3 is stricken. As modified, the order granting probation is affirmed.

_____
                         Premo, J.

WE CONCUR:

_____
      Rushing, P.J.

_____
      Márquez, J.

People v. Soto
H042115

| | |
|---|---|
| Trial Court: | Monterey County Superior Court<br>Superior Court No. SS142200A |
| Trial Judge: | Hon. Larry E. Hayes |
| Counsel for Plaintiff/Respondent:<br>The People | Kamala D. Harris<br>Attorney General<br><br>Gerald A. Engler<br>Chief Assistant Attorney General<br><br>Jeffrey M. Laurence<br>Acting Senior Assistant Attorney General<br><br>Catherine A. Rivlin<br>Supervising Deputy Attorney General<br><br>Elizabeth W. Hereford<br>Deputy Attorney General |
| Counsel for Defendant/Appellant: | Under appointment by the Court of Appeal<br>Michelle May Peterson |

People v. Soto
H042115