Filed 12/31/25  P. v. Fullmore CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C100777 |
| Plaintiff and Respondent, | (Super. Ct. No. 23FE001450) |
| v. | |
| PAUL WAYNE FULLMORE, | |
| Defendant and Appellant. | |

A California Highway Patrol (CHP) officer stopped a vehicle driven by defendant Paul Wayne Fullmore for expired registration tags.  The officer observed an open beer can in the vehicle's center console, and defendant exhibited signs of impairment.  A sample from a preliminary alcohol screening test yielded a blood alcohol content of 0.13 percent.  Defendant refused to provide a second sample.  The officer arrested defendant for driving under the influence of alcohol.  A chemical test performed on a blood draw obtained two and a half hours later yielded a blood alcohol content of 0.084 percent.

Defendant pleaded no contest to misdemeanor driving with a suspended license. A jury found defendant guilty of driving under the influence of alcohol with a prior conviction in the preceding 10 years, and driving with a blood alcohol concentration of

1

0.08 percent with a prior conviction within the preceding 10 years. The trial court sentenced defendant to three years in state prison.

On appeal, defendant argues that (1) the trial court erred in denying his request for a pinpoint instruction informing the jury, in part, that the "preliminary alcohol screening test should not be considered as a chemical test for evaluating the defendant's BAC [Blood Alcohol Content]"; (2) the $150 restitution fine imposed on count three is unauthorized and must be vacated or stayed; and (3) the abstract of judgment must be corrected because it incorrectly states that he has a prior strike and was sentenced under Penal Code[1] section 667, subdivisions (b) through (i), or section 1170.12. The People concede defendant's second and third points.

We conclude that defendant's contention concerning his proposed pinpoint instruction is without merit. We will modify the judgment to stay one fine and strike another. As modified, we will affirm the judgment. We will also order the abstract of judgment corrected.

## BACKGROUND

An amended felony complaint deemed an information charged defendant with driving under the influence of alcohol with a prior conviction within the preceding 10 years (Veh. Code, § 23152, subd. (a); count one); driving with a blood alcohol concentration of 0.08 percent with a prior conviction within the preceding 10 years (Veh. Code, § 23152, subd. (b); count two); and driving with a suspended license (Veh. Code, § 14601.2, subd. (a); count three). In connection with counts one and two, the information alleged pursuant to Vehicle Code section 23577 that defendant refused to submit to and failed to complete the chemical tests required pursuant to Vehicle Code section 23612. As to counts one and two, it was further alleged that, within the prior 10

---

[1]    Further undesignated section references are to the Penal Code.

2

years, defendant had sustained a conviction for driving under the influence of alcohol in violation of Vehicle Code section 23152, subdivision (a). As to count three, the information alleged that, within the prior five years, defendant had sustained a conviction for violating Vehicle Code section 14601.2, subdivision (a).

Defendant pleaded no contest to count three, admitted to a prior conviction occurring on February 8, 2019, as to that count, and admitted that the offense occurred within five years of another violation of Vehicle Code section 14601.2, subdivision (a). Defendant proceeded to trial on counts one and two.

*The Prosecution's Case*

At approximately 9:35 a.m. on January 27, 2023, CHP Sergeant Harold Garcia was on U.S. Highway 50 near Sunrise Boulevard when he observed a vehicle with expired registration tags. Sergeant Garcia stopped the vehicle to check its registration status. Defendant was the driver and sole occupant. Defendant was 5 feet 6 inches tall and weighed 145 pounds.

Sergeant Garcia approached the vehicle on the passenger side and opened the door. Sergeant Garcia smelled the odor of alcohol coming from the vehicle. He also saw an open 16-ounce can of beer in the center console. Sergeant Garcia retrieved the beer and placed it on top of defendant's vehicle. The beer was still cold to the touch, and it was approximately one-quarter full. Defendant initially denied having any alcoholic beverages to drink prior to driving.

Sergeant Garcia had defendant exit the vehicle. Defendant was unsteady on his feet. He leaned against a cement wall, seemingly to help maintain his balance. Sergeant Garcia could smell alcohol while defendant was speaking with him. Defendant's eyes were red and watery. Defendant admitted to having one beer, the open beer that had been in the truck's center console.

Sergeant Garcia planned to have defendant perform several field sobriety tests that evaluate impairment, including the horizontal gaze nystagmus, a walk-and-turn test, and a

3

one-leg stand test, the latter two for balance.  Additionally, each of the tests is designed to evaluate the subject's ability to follow instructions.  The tests require the subject to perform more than one task at a time, which can be difficult for someone who is impaired.

Defendant initially said he could not perform any of the tests.  He stated he had medical conditions, including an issue with his leg, asthma, diabetes, and he took cholesterol medication.  He said he could not perform a one-leg stand test or a test requiring him to walk in a straight line.

Sergeant Garcia administered the horizontal gaze nystagmus test.  That test requires the subject to stand with their feet together and their hands at their sides and to follow the officer's finger with their eyes without moving their heads.  When someone is impaired by alcohol, their eyes will involuntarily jerk.  The test yields a potential total of six "clues," three for each eye:  smooth pursuit, involuntary jerking prior to the 45-degree angle, and jerking at the extreme, beyond the 45-degree angle.

Sergeant Garcia repeatedly told defendant to keep his hands by his side, but defendant kept moving his hands up.  Sergeant Garcia initially testified that he observed all three clues for both eyes.  He subsequently testified, however, that he was not able to record maximum deviation beyond the 45-degree angle because of defendant's inability to follow his finger and hold for three seconds.  Therefore, Sergeant Garcia recorded four rather than six clues.

Sergeant Garcia then had defendant perform a "finger touch" test, which requires the subject to stand, feet together, while touching each fingertip with the thumb of the same hand, back and forth, counting with each touch, and doing so for three cycles.  Sergeant Garcia directed defendant not to begin until instructed, but defendant started the test before being prompted.  Defendant said he could not do it, and when he tried, he "would double pat a couple of times."  Defendant only attempted one set, not three as instructed.

4

Sergeant Garcia then used a preliminary alcohol screening device to measure defendant's blood alcohol level through his breath. Sergeant Garcia testified that he always makes sure to have a 15-minute observation period before getting a sample from such a device, during which he makes sure that the subject is not drinking, eating anything or chewing gum. On cross-examination, Sergeant Garcia acknowledged that, at one point, he got into his patrol vehicle for approximately two minutes to run a records check while defendant remained in his vehicle. However, he testified that he could still see defendant sufficiently to tell whether he was eating or drinking anything, and he did not "see any of that."

Sergeant Garcia explained to defendant that he was administering another field sobriety test. He explained that participating in this test did not satisfy the obligation to submit to a chemical test. At 9:53 a.m., Sergeant Garcia recorded a preliminary alcohol screening test result of 0.13 percent. Typically, Sergeant Garcia will wait two minutes and obtain a second sample, but defendant refused to provide a second sample, stating that he was hurting and that he had asthma.

Sergeant Garcia arrested defendant for driving under the influence. Sergeant Garcia relied on the odor of alcohol coming from defendant's vehicle; the open beer can in the vehicle; defendant's red and watery eyes; defendant's difficulty balancing without leaning on a wall; the smell of alcohol on defendant's breath; defendant's inability to follow instructions; the clues Sergeant Garcia observed on the horizontal gaze nystagmus test; and the result from the preliminary alcohol screening test.

Sergeant Garcia explained to defendant that, by being licensed in California, he gave his implied consent to submit to a chemical test if he was arrested for driving under the influence. Sergeant Garcia explained that defendant would be required to take a chemical test, either a breath test or a blood test, or he could refuse. Defendant stated he was going to refuse. Sergeant Garcia took defendant to the nearest CHP station and

5

obtained a warrant for a sample of his blood. Elizabeth Thorpe, a phlebotomist and supervisor for Valley Toxicology, performed a blood draw on defendant at 12:29 p.m.

Justin Hubbard, a criminalist, testified as an expert in the field of forensic alcohol analysis and the effects of alcohol on the human body. Hubbard processed defendant's blood kit. Defendant's ethanol result was 0.084 percent. Asked to explain how someone could have a preliminary alcohol screening test result of 0.13 percent at 9:53 a.m., but a blood test result of 0.084 percent at 12:29 p.m., Hubbard responded that one possibility is that the individual was "eliminating" at that time. Elimination refers to the body's process of removing alcohol from the body. There is an average elimination rate of approximately 0.02 percent per hour.

The prosecutor posed hypothetical questions to Hubbard based on a 63-year-old male who was 5 feet 6 inches tall and weighed 145 pounds. Hubbard testified that if that individual drank half of a 16-ounce can of beer with an alcohol concentration of 5.9 percent, the highest alcohol concentration that individual would reach would be between 0.024 and 0.025 percent. If that individual drank the entire 16-ounce can, Hubbard expected the individual's alcohol concentration to reach 0.049 to 0.050 percent. Based on those figures, Hubbard testified it would not make sense for that individual to have a 0.08 percent blood alcohol content if the individual only drank half of a 16-ounce can of beer or even a whole 16-ounce can of beer.

Hubbard acknowledged that an individual having a diabetic emergency could show signs similar to someone who is impaired due to alcohol consumption.

CHP Officer Michael Snell testified that the preliminary alcohol screening device used in this case was working correctly as of January 27, 2023, based on the results of an accuracy test performed on January 26, 2023, at 2:41 p.m. On cross-examination, defense counsel asked Officer Snell about the preliminary alcohol screening device, "It's not a chemical test, correct?" and Officer Snell responded, "That is correct." The preliminary alcohol screening test is a field sobriety test, not a chemical test.

6

*Verdict and Sentencing*

The jury found defendant guilty on counts one and two, and found true the enhancement allegations that defendant willfully refused to submit to, and willfully failed to complete, the chemical tests. The trial court found, beyond a reasonable doubt, that defendant had sustained a prior felony conviction in 2019 for violation of Vehicle Code section 23152, subdivision (a). The court sentenced defendant to the upper term of three years in state prison on count two, imposed the upper term of three years on count one but stayed execution of that sentence under section 654, imposed six months on count three and stayed execution of that sentence under section 654, and imposed fines and fees.

DISCUSSION

I

*Proposed Pinpoint Instruction*

A.     *Additional Background*

Defendant requested the following pinpoint instruction: "A preliminary alcohol screening test that indicates the presence or concentration of alcohol based on a breath sample in order to establish reasonable cause to believe the person was driving a vehicle in violation of [Vehicle Code,] Section 23152, is a field sobriety test and may be used by an officer as a further investigative tool. (Veh. Code[,§] 23612[.]) The preliminary alcohol screening test should not be considered as a chemical test for evaluating the defendant's BAC." He requested this instruction based on his position that, since the preliminary alcohol screening test is not a chemical test, refusal to submit to a preliminary alcohol screening test is not evidence of consciousness of guilt within the meaning of CALCRIM No. 2130, and a preliminary alcohol screening test is not the same as a chemical test for purposes of the rebuttable presumption in Vehicle Code section 23152, subdivision (a), or the Vehicle Code section 23577 enhancement.

7

The prosecutor objected to the proposed pinpoint instruction, arguing that the last sentence was potentially confusing and could be read as directing the jury to disregard the preliminary alcohol screening test altogether.

The trial court concluded the proposed pinpoint instruction was argumentative, was potentially an incorrect statement of law, and was confusing. The court elaborated: "When you say, 'The primary alcohol screening test should not be considered as a chemical test for evaluating the Defendant's BAC'–I guess–Yes, hypertechnically that's correct. [¶] But the way I read that . . . is: 'Okay, Jury, so don't consider that number, that PAS for evaluating the BAC.' [¶] And I think the California Supreme Court has already said, 'No, that's not the law. You can consider the number.' [¶] Title 17 applies if you're gonna consider the number. And . . . we've been through all that and they'll be instructed on that. [¶] . . . I think the first sentence is confusing. I don't think it's particularly helpful. [¶] I mean, the first sentence just says is: 'The PAS test may be used by an officer as an investigative tool.' Understood but I don't think I need to instruct on that. . . . I'll sustain the People's objection to the pinpoint for a number of reasons." The court reiterated its opinion that the proposed instruction was "very confusing." Thus, the court sustained the prosecution's objection to the proposed pinpoint instruction.

B.     *Defendant's Contentions*

Defendant argues the trial court erred in denying his request to give the jury the proposed pinpoint instruction. He asserts that the instruction clarified that the preliminary alcohol screening test is not a chemical test for purposes of the mandatory chemical testing requirement. He maintains that the proposed instruction would have made it clear to the jury that it was not to consider his refusal to submit to the preliminary alcohol screening test as evidence of consciousness of guilt, and also would have explained that the jury was not to apply the permissive inference under CALCRIM No. 2110 to the preliminary alcohol screening test result.

8

C.    *Pinpoint Instructions and Standard of Review*

"Pinpoint instructions ' "relate particular facts to a legal issue in the case or 'pinpoint' the crux of a defendant's case." ' [Citation.] 'Upon proper request, a defendant has a right to an instruction pinpointing the theory of defense . . . if the theory proffered by the defendant is supported by substantial evidence' [citation], the instruction is a correct statement of law [citation], and the proposed instruction does not simply highlight specific evidence the defendant wishes the jury to consider." (*People v. Jo* (2017) 15 Cal.App.5th 1128, 1173-1174.) "The trial court may properly refuse an instruction highlighting a defense theory if it is 'duplicative or potentially confusing.' " (*Id*. at p. 1174.)

"Our Supreme Court has stated that 'the independent or de novo standard of review is applicable in assessing whether instructions correctly state the law . . . .' " (*People v. Brugman* (2021) 62 Cal.App.5th 608, 622, fn. 3.) However, the California Supreme Court "recently applied an abuse of discretion standard in reviewing challenges to the denial of a pinpoint instruction on the ground that it was duplicative." (*Ibid*.) Defendant does not articulate a standard of appellate review, and the People employ the de novo standard. We conclude that the trial court properly denied the proposed pinpoint instruction even under the de novo standard of review.

D.    *Analysis*

Vehicle Code section 23612, subdivision (h), provides: "A preliminary alcohol screening test that indicates the presence or concentration of alcohol based on a breath sample in order to establish reasonable cause to believe the person was driving a vehicle in violation of Section 23140, 23152, or 23153 is a field sobriety test and may be used by an officer as a further investigative tool." (Veh. Code, § 23612, subd. (h).) The first sentence of defendant's proposed pinpoint instruction, set forth above, is virtually an exact quote of Vehicle Code section 23612, subdivision (h), only omitting the references

9

to Vehicle Code sections 23140 and 23153. Thus, the first sentence of defendant's proposed pinpoint instruction is a correct statement of law.

The second sentence of the proposed pinpoint instruction reads: "The preliminary alcohol screening test should not be considered as a chemical test for evaluating the defendant's BAC." The trial court focused on this sentence in denying defendant's request for the pinpoint instruction based, among other things, on its belief that the instruction was not a correct statement of law.

On one hand, the trial court stated that the sentence could be read as being correct "hypertechnically." As we interpret it, this technically correct reading of the pinpoint instruction would signify that the preliminary alcohol screening test may be used in evaluating defendant's blood alcohol content, but it should not be considered *as a chemical test* for evaluating defendant's blood alcohol content because it is not a chemical test. Perhaps a clearer pinpoint instruction would state, in the second sentence, that the preliminary alcohol screening test is not a chemical test, or that the preliminary alcohol screening test is not a chemical test as that term is used in the jury instructions. Defendant in his briefing argues that it would have been proper to instruct the jury that the preliminary alcohol screening test is not a chemical test, and that this would be a correct statement of law. However, defendant's proposed pinpoint instruction was not so limited.

The trial court also stated: "the way I read that . . . is: 'Okay, Jury, so don't consider that number, that PAS for evaluating the BAC.' [¶] And I think the California Supreme Court has already said, 'No, that's not the law. You can consider the number.' [¶] Title 17 applies if you're gonna consider the number. And . . . we've been through all that and they'll be instructed on that. [¶] . . . I think the first sentence is confusing." This echoed the prosecutor's objection that the last sentence of the proposed pinpoint instruction was potentially confusing and could be read as directing the jury to disregard the preliminary alcohol screening test altogether.

10

The trial court was correct that the blood alcohol content results from preliminary alcohol screening tests may be admissible. "Courts have found [preliminary alcohol screening] breath test results to be admissible . . . if they either comply with the regulations set forth in California Code of Regulations, title 17 . . . or satisfy three foundational elements set forth in [*People v. Adams* (1976) 59 Cal.App.3d 559, 561]: (1) properly functioning equipment, (2) a properly administered test, and (3) a qualified operator." (*Kazelka v. Department of Motor Vehicles* (2025) 109 Cal.App.5th 1239, 1247-1248, fn. omitted; see *People v. Williams* (2002) 28 Cal.4th 408, 417 [approving of the holding in *Adams*].) Thus, the trial court was correct that preliminary alcohol screening test results may be considered in evaluating a defendant's blood alcohol content.

Again, the second sentence of the proposed instruction states: "The preliminary alcohol screening test should not be considered as a chemical test for evaluating the defendant's BAC." We agree with the trial court that this sentence is ambiguous and susceptible to an interpretation indicating that the preliminary alcohol screening test results should not be considered in evaluating the defendant's blood alcohol content. Based on this reading, the proposed pinpoint instruction is an incorrect statement of law. And based on its ambiguity, the proposed instruction was potentially confusing to the jury.

Because it may be read in such a way as to constitute an incorrect statement of law, and because it is ambiguous and potentially confusing to the jury, we conclude that the trial court properly denied defendant's request for the pinpoint instruction. (See generally *People v. Jo, supra*, 15 Cal.App.5th at p. 1174 [defendant may have a right to a pinpoint instruction *if it is a correct statement of law*; trial court may deny request for a pinpoint instruction where the proposed instruction is potentially confusing].)

## II

### *Restitution Fines and Parole Revocation Restitution Fines*

The trial court imposed a restitution fine of $300 (§ 1202.4, subd. (b)), and a suspended a parole revocation restitution fine of $300 (§ 1202.45). In addition, on count three, the misdemeanor, the court imposed a restitution fine of $150 (§ 1202.4, subd. (b)) and a suspended a parole revocation restitution fine in the same amount (§ 1202.45).

Defendant argues that the $150 restitution fine on count three is unauthorized and must be vacated or stayed. He argues that the imposition of this fine and the fine imposed on the felony counts constitute multiple punishment and violate section 654. The People agree that the trial court erred because count three arose out of the same indivisible course of conduct as count two, and therefore, the fine imposed on count three should be stayed pursuant to section 654.

Defendant did not raise this issue in the trial court. However, "[w]hen a court imposes multiple punishments in violation of section 654, it acts in excess of its jurisdiction and imposes an unauthorized sentence that can be challenged for the first time on appeal." (*People v. Soto* (2016) 245 Cal.App.4th 1219, 1234.)

"An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654.) Thus, section 654 "precludes multiple punishments for a single act or indivisible course of conduct." (*People v. Hester* (2000) 22 Cal.4th 290, 294.) A restitution fine imposed under section 1202.4 is a punishment subject to section 654. (*People v. Soto, supra*, 245 Cal.App.4th at p. 1235.)

Defendant's convictions for driving with a blood alcohol concentration of 0.08 percent with a prior conviction within the preceding 10 years on count two and driving with a suspended license on count three "arose from the single physical act of driving" on January 27, 2023. (*People v. Soto, supra*, 245 Cal.App.4th at p. 1234.) "Punishing

12

defendant for both of these convictions would therefore violate section 654." (*Ibid*.) Thus, the trial court violated section 654's ban on multiple punishments when it imposed and executed a $150 restitution fine on count three.

There is another issue with these fines, specifically the imposition of a suspended parole revocation restitution fine on count three. The parties did not expressly address this issue, although, in arguing whether the fines imposed on count three were unauthorized, they had the opportunity to do so. (See Gov. Code, § 68081; see also *People v. Alice* (2007) 41 Cal.4th 668, 677 [Gov. Code, § 68081 "does not require that a party actually have briefed an issue; it requires only that the party had the opportunity to do so"; by requiring the parties to file opening and responding briefs, the California Rules of Court give the parties "the opportunity to brief any issues that are fairly included within the issues actually raised"].)

Defendant is not subject to parole separately for the misdemeanor and is thus not subject to a parole revocation restitution fine on count three. (See *People v. Holmes* (2007) 153 Cal.App.4th 539, 547.) Thus, the trial court erred in imposing the suspended parole revocation restitution fine on count three.

Accordingly, as to count three, we will stay, pursuant to section 654, the $150 restitution fine, and strike as unauthorized the $150 suspended parole revocation restitution fine.

III

*Abstract of Judgment*

Defendant argues that the abstract of judgment must be corrected because it erroneously states that he has a prior strike and that he was sentenced under section 667, subdivisions (b) through (i), or section 1170.12. The People agree, as do we. There is no indication in the record defendant has sustained a prior strike conviction. We will order the abstract of judgment corrected to reflect that he does not have a strike prior, and he

13

was not sentenced pursuant to section 667, subdivisions (b) through (i), or section 1170.12.

The People further argue that the abstract of judgment must be corrected to reflect that the jury found true Vehicle Code section 23577 enhancement allegations as to counts one and two. We decline to correct the abstract in this respect because, in sentencing defendant, the trial court did not impose any of the criminal penalties in Vehicle Code section 23577, subdivision (a).

DISPOSITION

The judgment is modified by staying, under section 654, the $150 restitution fine imposed on count three, and striking the $150 suspended parole revocation restitution fine imposed on that count. As so modified, the judgment is affirmed. The trial court shall prepare an amended abstract of judgment (1) omitting, in section 4, the indication that defendant was sentenced under section 667, subdivisions (b) through (i), or section 1170.12, and that he has a strike prior, and (2) indicating, in section 13, that the $150 restitution fine imposed on count three is stayed under section 654 and omitting the $150 suspended parole revocation restitution fine erroneously imposed on count three, and forward a certified copy to the Department of Corrections and Rehabilitation.

\s\
Krause, J.

We concur:

\s\
Duarte, Acting P. J.

\s\
Boulware Eurie, J.

14